UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA RADEVSKA, an individual, ALI ROCK, an individual, on behalf on themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NOBLE AMERICAS ENERGY SOLUTIONS, LLC, a California limited liability company; NOBLE AMERICAS CORP., a Delaware corporation, NOBLE AMERICAS' CIGNA HEALTH CARE OPEN ACCESS PLUS PLAN, an ERISA medical benefits plan; CIGNA CORPORATION, a Connecticut corporation, and CIGNA HEALTHCARE OF CALIFORNIA, Inc., a California Corporation,<br><br>Defendants. | Case No.: 15-cv-0271-GPC-RBB<br><br>**ORDER DENYING DEFENDANTS CIGNA CORPORATION AND CIGNA HEALTHCARE OF CALIFORNIA'S MOTION TO DISMISS**<br><br>[ECF No. 11] |

# INTRODUCTION

Plaintiffs Tamara Radevska ("Radevska") and Ali Rock (collectively "Plaintiffs") bring this putative class action on behalf of themselves and others similarly situated. Plaintiffs claim that Defendants wrongfully terminated Plaintiffs' medical benefits in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Before the Court is Defendants Cigna Corporation ("Cigna Corp.") and Cigna Healthcare of California, Inc.'s ("CHC-CA") (collectively "CIGNA" or "Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss, ECF No 11.) The parties have fully briefed the motion. Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. Having considered the parties' submissions and the applicable law, the Court **DENIES** Defendants' motion.

# FACTUAL BACKGROUND

## I.     The Parties

Plaintiff Radevska is a former employee of Citizens Financial Group, Inc. ("Citizens"). (Compl. ¶ 1, ECF No. 1.) While employed with Citizens, Radevska was a plan participant under a Group Disability Income Policy ("the LTD Plan"), as defined under 29 U.S.C. § 1002(7). (*Id.*) Plaintiff Rock was an LTD Plan beneficiary designated by Radevska. (*Id.* ¶ 2.)

Defendant Noble Americas' Cigna Healthcare Open Access Plus Plan ("the Plan") is an "employee welfare plan" as defined by ERISA, 29 U.S.C. § 1002(1) *et seq.* (*Id.* ¶ 3.)

Defendant Noble Americas Energy Solutions, LLC ("Noble") is a publicly traded limited liability company, active under the jurisdiction of California since October 31, 2006. (*Id.*) Noble is an energy retailer offering commercial and industrial business products and services. (*Id.* ¶ 4.) Noble is part of the Noble Group, a global company with over 14,000 employees and office locations throughout the United States. (*Id.*)

Noble Americas Corp. ("Noble Americas") is a California corporation and a wholly owned subsidiary of Noble or Noble Group. (*Id.* ¶ 5.)

Defendant Cigna Corp. is a global health services company. (*Id.*) Cigna Corp.'s subsidiaries provide medical, dental, disability, life and accident insurance and related products and services. (*Id.* ¶ 7.)

Defendant CHC-CA is a California corporation and wholly owned subsidiary of Cigna Corp. (*Id.* ¶ 6.) CHC-CA is responsible for administering claims and paying benefits provided by the Plan in accordance with its provisions. (*Id.*)

## II.     Plaintiffs' Allegations

Plaintiff Radevska was formerly employed by Citizens Financial Group, Inc. (*Id.* ¶ 1.) While at Citizens, Radevska was a plan participant under the LTD Plan. (*Id.*) Radevska became permanently disabled around August 2010. (*Id.* ¶ 29.) Under the terms of the LTD Plan, Radevska remained eligible for medical benefits while she was considered disabled. (*Id.* ¶ 28.) On September 21, 2010, Radevska was informed that Sentinel Benefits & Financial Group ("Sentinel") would be administering the collection of her benefits premiums during her leave of absence. (*Id.* ¶ 30.) Radevska was informed in a letter dated October 26, 2010 that her request for a Family and Medical Leave Act ("FMLA") leave of absence was approved from August 12, 2010 to November 3, 2010. (*Id.* ¶ 29.)

On or around November 1, 2010, Noble acquired Citizens through Noble's acquisition of Sempra Energy Solutions from Sempra Energy and the Royal Bank of Scotland ("RBS"). (*Id.* ¶¶ 1, 4.) On October 4, 2010, Noble sent Radevska a Confirmation of Employment letter ("Offer Letter"), offering her employment and paid-for medical benefits pending the closing of the acquisition. (*Id.* ¶ 31; Ex. 1 (Offer Letter).) The letter stated, "You will be eligible for enrollment in the following Company benefit plans, from the day of closing, details of which will be provided to you under separate cover: health plan, from your first employment day." (*Id.* at 2.) Radevska signed and returned the Offer Letter on October 15, 2010. (*Id.*) She was disabled under the LTD Plan at that time. (*Id.*)

Pursuant to the terms of Noble's Supplemental "2010 Benefits Enrollment Guide," benefit plans were available to "all active full-time employees and their dependents

working 30 or more hours per week." (*Id.* ¶ 36; Ex. 2 at 1 (Enrollment Guide).) Coverage for medical benefits became effective on the date of Radevska's hire and Noble agreed to pay the full cost of medical coverage and provide long-term disability coverage up to 60% of the employees' base pay. (*Id.* ¶ 32; Ex. 2 at 2.) Plaintiffs allege that Noble's medical insurance provider was CHC-CA at the time. (*Id.* ¶ 32.)

On November 9, 2010, Sentinel sent a letter to Radevska stating that Plaintiffs were entitled to continue health care coverage in the RBS Plan. (*Id.* ¶ 33; Ex. 3 ("Sentinel Letter").) The Enrollment Form Option Page enclosed with the Sentinel Letter provided: "The benefit coverage offered to you on the Enrollment Form is identical to the coverage in which you participated when you were in the Active Employee Plan." (*Id.*, Ex. 4 ("Enrollment Form").) The Enrollment Form listed "CIGNA HealthCare – OAP Plan 6" as one of the coverage options. (*Id.*) Plaintiffs argue that the Enrollment Form constitutes further assurance by Sentinel that the benefit coverage offered to Radevska by Noble was identical to the coverage she participated in under the LTD Plan. (*Id.* ¶ 34.) Based on these communications, Radevska chose to take Noble's coverage instead of continuing coverage under the LTD Plan under COBRA. (*Id.* ¶ 35.)

After Noble paid Plaintiffs' monthly health care premiums for over three years, on February 10, 2014, Noble sent Radevska a letter stating that a recent benefit audit determined that she and her spouse were erroneously enrolled in Noble's medical and dental plans at the time of the acquisition and, because she was not an "active employee," Plaintiffs were not eligible for coverage under any of Noble's benefits plans. (*Id.* ¶ 36; Ex. 5 ("Termination Letter").) The letter further stated that Noble would be terminating Plaintiffs' medical and dental coverage effective April 30, 2014. (*Id.*)

On March 25, 2014, Cigna Corp.[1] sent Radevska a fax pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), which "require[s]

---

[1] The HIPAA Letter is signed by Michelle Pulliam, a "Cigna Healthcare Representative." (Compl., Ex. 6 (HIPAA Letter) at 2.) A footnote at the bottom of the letter states: "Cigna and Cigna Healthcare are registered service marks and refer to various operating subsidiaries of Cigna Corporation." (*Id.*)

employers and health insurance carriers to provide documentation of coverage when an individual loses health coverage." (*Id.* ¶ 42, Ex. 6 ("HIPAA Letter").) The HIPAA Letter further stated, "This letter will serve as your certification of prior coverage with Cigna HealthCare," and under "Date coverage ended (or if coverage has no ended, enter 'continuing')" stated "CONTINUING." (*Id.*) Plaintiff states that this letter constitutes assurances that she was still covered and that her coverage would continue without limitation. (*Id.*)

Plaintiffs seek an eligibility determination under the terms of the Plan and corresponding eligibility for health benefits from CIGNA. Plaintiffs assert the following causes of action: (1) Class Action claim pursuant to 29 U.S.C. § 1132(a)(1)(B) for a determination of Plaintiffs' and the Class' current and future rights under the Plan, as extended via Noble's terms of employment; and (2) Class Action claim pursuant to 29 U.S.C. § 1132(a)(3) for equitable relief.

## PROCEDURAL HISTORY

On February 9, 2015, Plaintiffs filed their Complaint. (Compl., ECF No. 1.) On August 10, 2015, Defendants file the instant motion to dismiss. (Mot. Dismiss, ECF NO. 11.) On September 11, 2015, Plaintiffs file an opposition. (Opp'n, ECF No. 20.) On September 25, 2015, Defendants filed a reply. (Reply, ECF No. 21.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule12 (b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above

the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

## DISCUSSION

### I. Evidentiary Issues

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). A court must normally convert a Rule 12(b)(6)

motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings . . . . A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie,* 342 F.3d 903, 907-08 (9th Cir. 2003). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (A court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity), overruled on other grounds by *Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002).

Thus, in ruling on a motion to dismiss, the court can consider material that is subject to judicial notice under Rule 201 of the Federal Rules of Evidence. FED. R. EVID. 201. Under Rule 201, the court can judicially notice "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." *Id.*

Defendants have submitted exhibits for the Court to consider in support of their motion to dismiss: (1) the Summary Plan Description ("SPD") (Mot. Dismiss, Decl. of Allison Hollis, Ex. 1 (SPD), ECF No. 1) and (2) the Administrative Services Only Agreement ("ASO") between Noble and Connecticut General Life Insurance Company ("CGLIC") (*id.*, Decl. of Victoria Sirica, Ex. 1 (ASO)). Defendants argue that these documents show that neither Cigna Corp. or CHC-CA are proper parties because CHC-CA does not provide administrative services under the Plan and neither CIGNA entity acts in a fiduciary capacity with discretion to make eligibility determinations under the plan. (*Id.* at 2.) Defendants argue that the Court can consider the SPD and ASO because the Complaint specifically references the SPD and indirectly references the ASO and neither

1 document's authenticity is disputed. (*Id.* at 15.) In the alternative, Defendants contend
2 that the Complaint relies on both documents. (*Id.*)

3 Plaintiffs object to the Court's consideration of both of these exhibits because they
4 are not attached to the Complaint, not necessary for understanding Plaintiffs' claims against
5 Defendants, and are incomplete. (Opp'n at 22, ECF No. 20.) Plaintiffs additionally argue
6 that these documents took effect in July 2011, "well after Ms. Radevska made the choice
7 to join the Noble Plan in October 2010." (*Id.*)

8 The Court concludes that it is inappropriate for it to consider the SPD and ASO.
9 Plaintiffs' claims do not necessarily rely on the contents of the SPD—Plaintiffs' claims are
10 premised on Defendants' ratification of eligibility by paying premiums and claims for
11 almost four years and information provided and relied upon by Plaintiffs in the Offer Letter,
12 Enrollment Guide, Enrollment Form, Sentinel Letter, and HIPAA Letter. (Compl., Exs. 1-
13 6, ECF No. 1.) Plaintiffs' Complaint references the SPD only insofar as stating that ERISA
14 requires that SPDs be distributed to participants and include certain disclosures regarding
15 potential loss of coverage—and that "Defendants failed to circulate any communication,
16 either in an SPD or otherwise, indicating that post-acquisition benefits were limited in any
17 way—temporally or otherwise." (*Id.* ¶ 49.) Furthermore, it is unclear whether these
18 documents were in effect at times relevant to the dispute and Plaintiffs dispute the
19 authenticity, foundation and relevance of these documents. (*Id.*) Even if the Court were
20 to consider the SPD, the Supreme Court has clarified that SPDs make statements "*about*
21 the plan, but . . . their statements do not themselves constitute the *terms* of the plan . . . ."
22 *CIGNA Corporation v. Amara*, 563 U.S. 421, 131 S. Ct. 1866, 1878 (2011). As such, to
23 the extent that the terms of the SPD conflict with other Plan documents, the terms of the
24 SPD do not govern. *See Eugene v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124,
25 1131 (10th Cir. 2011) (discussing *Amara*). For the foregoing reasons, the Court will not
26 consider Defendants' exhibits in support of their motion to dismiss.
27 //
28 //

## II. Count One: 29 U.S.C. § 1132(a)(1)(B)

ERISA permits an employee plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Pursuant to that provision, Plaintiffs seek a determination of the current and future rights of Plaintiffs and the class to benefits under the terms of the Plan "as extended via Noble's terms of employment." (Compl. ¶ 37, ECF No. 1.) Plaintiffs argue that they and the class are entitled to receive continued medical coverage and benefits under the Plan "based on the terms and conditions of the Plan, the terms of the acquisition, and Noble's terms of employment," as well as other documents and representations supplied by Defendants. (*Id.* ¶ 40.)

Defendants argue that Plaintiffs fail to state a claim in Count One against CHC-CA because (1) Plaintiffs admit they are not eligible under the Plan; and (2) CHC-CA does not have any discretion or authority over eligibility determinations. (Mot. Dismiss at 7-9, ECF No. 11.)

### A. Eligibility

Defendants assert that Plaintiffs have failed to identify any terms of the Plan that would make them eligible for benefits and have admitted that every correspondence they received regarding the Plan indicated that they are not eligible. (*Id.* at 7.) Defendants cite to the Offer Letter statement that Radevska would be eligible to participate in the Plan from her "first employment day," (*id.* (citing Compl., Ex. 1 (Offer Letter), ECF No. 1)), and the Enrollment Guide provision that benefits plans are available to "all active full-time employees and their dependents working 30 or more hours per week," (*id.* at 8 (citing Compl., Ex. 2 (Enrollment Guide) at 1, ECF No. 1)). Defendants contend that Plaintiffs' claim fails because they have not alleged that Radevksa was ever an "active full-time employee working 30 or more hours a week because, in fact, Radevska never was an active full time employee." (*Id.*)

//

The Court finds that Plaintiffs sufficiently allege they were eligible to receive health benefits under the Plan.  Plaintiffs state that, while Radevska was disabled and on medical leave (*id.* ¶ 29), Noble acquired Citizens and sent her an Offer Letter, which "offered medical coverage" (*id.* ¶ 31).  Plaintiffs allege that Radesvka became an employee by accepting Noble's offer of employment (*id.* ¶ 4) and was "eligible for enrollment in Noble's benefits plans from the day of the acquisition's closing, including Noble's plan" (*id.* ¶ 32).  The Court finds that Plaintiffs' failure to allege that Radevska met the eligibility requirements specified in the Enrollment Guide is not dispositive based on the allegations in the case—specifically that Radevska was permanently disabled, offered medical coverage by Noble, and on medical leave when Noble acquired Citizens.  Accepting as true Plaintiffs' allegations and all reasonable inferences drawn therefrom, the Court finds that Plaintiffs' Complaint sufficiently alleges that Plaintiffs were eligible for or entitled to benefits pursuant to the terms of Radevska's employment by Noble.

### B.    Proper Party

Defendants argue that Plaintiffs fail to state a cause of action under 29 U.S.C. § 1132(a)(1)(B) against CHC-CA because it is not authorized to determine who is eligible to participate in the Plan or resolve any disputes regarding eligibility  (Mot. Dismiss at 8-9, ECF No. 11.)  Defendants contend that CHC-CA did not make the decision to terminate Plaintiffs from the Plan and that Noble has the "sole authority and responsibility" to make eligibility determinations.  (*Id.* at 9.)  Defendants further argue that CHC-CA does not act in a fiduciary capacity with respect to determining eligibility and that Noble set the rules for eligibility and communicated who is not eligible to participate.  (*Id.*)  Defendants maintain that CHC-CA "merely performed administrative functions within the framework designed and implemented by Noble."  (*Id.*)  Plaintiffs respond that a defendant need not possess discretion and authority over eligibility determinations to be a proper defendant and CHC-CA is a logical defendant to enforce Radevska's rights under the terms of the Plan because it is responsible for paying legitimate benefit claims. (Opp'n at 8-9, ECF No. 20.)

In their argument, Defendants ignore whether their alleged role paying benefits affects their status as a proper party. Accepting Plaintiffs' allegations as to the payment of benefits, the Court finds that CHC-CA is a proper party under the Ninth Circuit standards set out in *Cyr v. Reliance Standard Life Ins. Co.,* 642 F.3d 1202, 1207 (9th Cir. 2011). The *Cyr* court held that in determining who is a proper party in a § 1132(a)(1)(B) action, the focus is not on who is a fiduciary but rather who can "redress[] the 'act or practice which violated any provision of [ERISA Title I].'" *Id.* at 1206 (quoting *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246-47).

In this case, Plaintiffs allege that CHC-CA "was/is responsible for administering claims and paying benefits provided by the Plan in accordance with its provisions." (Compl. ¶ 6, ECF No. 1.) Since CHC-CA allegedly has authority to resolve benefit claims and the responsibility to pay them, it is the proper defendant for an action to recover benefits as authorized by § 1132(a)(1)(B). *See Cyr,* 642 F.3d at 1207; *Moore v. Lafayette Life Ins. Co.,* 458 F.3d 416, 438 (6th Cir. 2006) (holding that the claims administrator is the proper defendant in an action for ERISA benefits and dismissal of the plan administrator was proper where the claims administrator exercised full authority to adjudicate claims for benefits); *Garren v. John Hancock Mut. Life Inc. Co.,* 114 F.3d 186, 187 (11th Cir. 1997) (holding that "the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan); *Cox v. Allin Corp. Plan,* No. 12–5880–SBA, 2013 WL 1832647, at *4 (N.D. Cal. May 1, 2013) ("A proper defendant in a § 1132(a)(1)(B) claim is one who has authority to resolve benefit claims or who has responsibility to pay them."); *Sender v. Franklin Res., Inc.*, 931 F. Supp. 2d 959, 973 (N.D. Cal. 2013) *rev'd and remanded*, 606 F. App'x 379 (9th Cir. 2015).

The Court finds that, at this stage, CHC-CA is a proper defendant in this action. As such, the Court **DENIES** Defendant's motion to dismiss Count One against CHC-CA.

### III.   Count Two: 29 U.S.C. § 1132(a)(3)

ERISA Section 502(a)(3) authorizes plaintiffs to bring an action to enjoin any act that violates the terms of the plan or to obtain appropriate equitable relief to redress such

violations or to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3). Plaintiffs seek "any and all appropriate equitable remedies . . . including but not limited to: reformation, equitable estoppel, restitution, and surcharge." (Compl. ¶ 60, ECF No. 1.)

Defendants contend that Plaintiffs' second cause of action must be dismissed because Plaintiffs fail to state facts sufficient to establish that the Defendants were fiduciaries under ERISA with respect to eligibility determinations and equitable remedies are inappropriate against CIGNA. Plaintiffs respond that an ERISA plaintiff may bring suit against a "nonfiduciary 'party in interest.'" (Opp'n at 11, ECF No. 20 (citing *Harris Trust*, 530 U.S. at 241).) Plaintiffs further argue that even if Plaintiffs' must allege that the CIGNA entities are fiduciaries, the allegations do so sufficiently to survive a motion to dismiss because CIGNA acted in a fiduciary capacity by "making and communicating eligibility determinations and paying claims." (*Id.* at 13.) Plaintiffs maintain that while equitable remedies cannot be determined at this time, they are properly pled. (*Id.* at 14.)

**A.     Proper Defendants**

Described as a "catchall" provision, ERISA Section 502(a)(3) offers "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe,* 516 U.S. 489, 512 (1995). The Supreme Court in *Harris Trust* clarified that § 502(a)(3) does not impose a limit (aside from the "appropriate equitable relief" caveat) on the universe of possible defendants. *Harris Trust*, 530 U.S. at 246. "Indeed, § 502(a)(3) makes no mention at all of which parties may be proper defendants—the focus, instead, is on redressing the "*act or practice* which violates any provision of [ERISA Title I]." *Id.* (citing 29 U.S.C. § 1132(a)(3)) (emphasis in original). Thus, contrary to Defendants' contention that "[t]o establish an action for equitable relief under . . . 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity, and must violate ERISA-imposed fiduciary obligations" (citing *Mathews v. Chevron Corp.,* 362 F.3d 1172, 1178 (9th Cir. 2004), Plaintiffs need not allege that the CIGNA entities were fiduciaries. The Court nonetheless finds that Plaintiffs do so sufficiently to survive a motion to dismiss.

"ERISA's definition of 'fiduciary' is functional rather than formal." *Parker v. Bain,* 68 F.3d 1131, 1139 (9th Cir. 1995). A person's actions determine whether he is a fiduciary, even if the plan documents do not assign fiduciary duties to the person. *Id.* at 1140 ("Thus, if Parker in fact exercised any discretionary authority over Plan assets, then he was a fiduciary, regardless whether the Plan itself named him as such."); *Acosta v. Pacific Enters.,* 950 F.2d 611, 617-18 (9th Cir. 1991) (stating the statutory language 'makes clear that a person's actions, not the official designation of his role, determine whether he enjoys fiduciary status.')." "The ERISA fiduciary duty includes the common law duty of loyalty, which requires fiduciaries to deal fairly and honestly with beneficiaries." *Farr v. U.S. West Commc'ns, Inc.*, 151 F.3d 908, 915 (9th Cir. 1998). In the Ninth Circuit, a fiduciary has an obligation to convey complete, thorough, and accurate information that is material to a beneficiary's circumstance. *Id.* at 914, 915. The Ninth Circuit has also held that "an ERISA fiduciary has an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits" and "to provide an individual faced with termination of plan coverage, upon request, 'complete and correct material information on [his] status and options.'" *Acosta v. Pacific Enterprises*, 950 F.2d 611, 619 (9th Cir. 1991), as amended by 1992 U.S. App. LEXIS 639 (9th Cir. 1992) (quoting *Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747, 751 (D.C. Cir. 1990)).

In *Hecht v. Summerlin Life & Health Ins. Co.,* 536 F. Supp. 2d 1236, 1242-43 (D. Nev. 2008), the court explained: "[a] person is an ERISA fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A). The court held that the defendant's fiduciary status was sufficiently established by an allegation in the complaint that the defendant "made the decision denying [Plaintiff's]

eligibility for benefits . . . ." *Hecht*, 536 F. Supp. 2d at 1243 ("Person with the authority to grant or deny claims, or to review the denial of claims, for benefits under the relevant ERISA plan is a fiduciary"). The same reasoning extends to this case.

Plaintiffs allege that CHC-CA "was/is responsible for administering claims and paying benefits provided by the Plan in accordance with its provisions." (Compl. ¶ 6, ECF No. 1.) Plaintiffs also state that at the time of Radevska's hire, when medical coverage under the Plan became effective, "Noble's provider for medical insurance was [CHC-CA]." (*Id.* ¶ 32; Ex. 2 (Enrollment Guide) at 3.) Further, the HIPAA Letter, which Plaintiffs claim provided further assurances of their eligibility under the Plan, states: "Name, address, and telephone number of plan administrator or issuer responsible for providing this certificate: The Cigna HealthCare company listed at the top of this certificate." (*Id.*, Ex. 6 at 1.) The letterhead is a "Cigna" insignia and "Cigna / Cigna OneView" is listed as the sender. (*Id.*) The correspondence is unclear regarding which "Cigna HealthCare company" is the plan administrator or issuer from these communications.[2] Plaintiffs argue that in light of these facts, CIGNA was a fiduciary because it "ma[de] and communicat[ed] eligibility determinations" and "evaluat[ed] and pa[id] medical claims" (Opp'n at 13, ECF No. 20). Plaintiffs allege that Defendants breached their fiduciary duties by, inter alia, failing to adequately inform Plaintiffs that medical coverage under the Plan would be affected after the acquisition and falsely leading Plaintiffs to believe their medical coverage and benefits would continue. (Compl. ¶ 53, ECF No. 1.) Plaintiffs additionally allege that Defendants "failed to circulate any communication, either in an SPD or otherwise, indicating that post acquisition benefits were limited in any way—temporally or otherwise"

---

[2] Defendants also argue that Cigna Corp. specifically is not a proper party because the Complaint does not allege any conduct by Cigna Corp. or purport to make alter ego allegations. (Mot. Dismiss at 18, ECF No. 11.) As the Court has noted, communications from CIGNA relied on by Plaintiffs are ambiguous with respect to which CIGNA entity they are attributable to. (*See, e.g.,* Compl., Ex. 6 (HIPAA Letter)). Moreover, Defendants themselves lump the CIGNA entities together. (*See, e.g.,* Opp'n at 10-13.) The Court finds that dismissal of Cigna Corp. at this juncture, before evidence disclosing the relationships and responsibilities of various CIGNA entities has been adduced, is inappropriate.

in violation of ERISA. (*Id.* ¶ 49.) The Court finds that Plaintiffs sufficiently allege that CIGNA was a fiduciary and breached its fiduciary duties.

### B. Propriety of Equitable Remedies Against CIGNA

Defendants argue that the equitable remedies Plaintiffs seek—reformation, equitable estoppel, restitution, and surcharge—if they are appropriate remedies at all, are not appropriate remedies against CIGNA. (Mot. Dismiss at 10, ECF No. 11.) Plaintiffs respond that Plaintiffs allege sufficient facts to support the availability of each remedy from each named defendant. (Opp'n at 14, ECF No. 20.)

As recognized in *CIGNA*, there are at least three types equitable relief under (a)(3) that might apply to rectify a breach of fiduciary duties: plan reformation, equitable surcharge, and equitable estoppel. *See CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). At the motion to dismiss stage, the proper equitable remedies for Plaintiffs' claims (if any) cannot be determined. Plaintiffs need only sufficiently allege one theory of recovery under § 1132(a)(3). At this early pleading stage, the Court finds that Plaintiffs have alleged sufficient facts to support the remedy of reformation under §1132(a)(3) and does not presently need to address the propriety of the other equitable remedies.

Defendants argue that reformation is not an appropriate remedy against CIGNA because "CIGNA cannot amend or reform the plan because Noble, not CIGNA, is the Plan sponsor and administrator." (Mot. Dismiss at 10, ECF No. 11.) While that may ultimately prove to be the case, Plaintiffs allege that that CHC-CA "was/is responsible for administering claims and paying benefits provided by the Plan in accordance with its provisions." (Compl. ¶ 6, ECF No. 1.) Plaintiffs also state that at the time of Radevska's hire, when medical coverage under the Plan became effective, "Noble's provider for medical insurance was [CHC-CA]." (*Id.* ¶ 32; Ex. 2 (Enrollment Guide) at 3.) Further, the HIPAA Letter appended to the Complaint names "The Cigna HealthCare company listed at the top of this certificate" as the Plan administrator or issuer. (*Id.*, Ex. 6 at 1.) Based on Plaintiffs' non-conclusory allegations, which this Court must regard as true, and all inferences drawn in favor of the nonmoving party therefrom, it is plausible that one or

both of the CIGNA Defendants may be able to amend or reform the Plan.

In light of the foregoing, the Court **DENIES** Defendant's motion to dismiss Count Two against the CIGNA Defendants.

## CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss the Complaint (ECF No. 11) is **DENIED.**

**IT IS SO ORDERED.**

Dated:  November 9, 2015

Hon. Gonzalo P. Curiel
United States District Judge